Richards, J.
Columbus Ewalt, as administrator de bonis non of Elizabeth Delano, deceased, commenced this action in the court of common pleas against the defendant Benjamin Ames, individually, and as surviving executor of the last will and testament of Columbus Delano, deceased, and also against other defendants, for a citation to appear and disclose as to the assets of the estate of said Columbus Delano, deceased, in their possession or under their control. Benjamin Ames filed a second amended answer denying most of the allegations contained in the petition, and setting up numerous defenses against others therein.
On the trial in the court of common pleas the issues were found and adjudged with the defendants, and the petition dismissed. Error is prosecuted to this court and a reversal of the judgment so rendered is demanded upon numerous grounds.
Columbus Delano was a distinguished citizen of Mount Vernon who died testate on October 26, 1896, leaving as his widow, Elizabeth Delano. The \yidow died testate in August, 1897. At the time Columbus Delano executed his last will and testament, to-wit, on November 13, 1891, he was *376 eighty-two years of age, had been a brilliant lawyer, was a man of wide experience in business affairs, had represented Knox county in the general assembly, had represented his district in congress, had served as commissioner of internal revenue during the first term of President Grant, and as secretary of the interior during the second term of that president. His wife, Elizabeth, appears by the' evidence to have been a lady of education and refinement and to have enjoyed his implicit confidence, and to have been entirely familiar with his numerous business transactions and with the extent of his large estate. His will is shown to be in her handwriting, and her will was prepared in her own handwriting, but before she executed it she had the same typewritten by an attorney at law. At the time of Columbus Delano’s death he had an estate variously estimated, but apparently exceeding $150,000 in value. His wife, also, was the owner of a very considerable estate. They had two children, John S. Delano and Elizabeth Delano Ames, the latter residing in Washington,' D. C. Mrs. Ames had three sons and one daughter, and John S. Delano was married and had a daughter named Eleanor Delano Shealey. John S. Delano died in 1896, shortly before the death of his father Columbus Delano.
While many defenses are urged in this case to the contentions made by the plaintiff,' we find it necessary to discuss only three of them.
First: It is insisted that Columbus Ewalt is not the administrator de bonis non of Elizabeth Delano, deceased.
*377 Second: It is insisted that the property which is sought to be reached by this proceeding was given by Columbus Delano to his daughter, Elizabeth Delano Ames, by completed gift, inter vivos, a number of years before the donor’s death.
Third: It is insisted by the defendants that the widow, Elizabeth Delano, elected in fact to take under the will of Columbus Delano, and that having done so she was not by the terms of that will entitled to any of the assets now sought to be reached.
If either of the defenses named should be found to be sustained the plaintiff can not recover. We will take up first the issue as to the appointment of Columbus Ewalt as administrator de bonis non, with the will annexed, of the estate of Elizabeth Delano, deceased. In her will she named as executor H. H. Greer, a prominent attorney of Mount Vernon, who qualified and served as such executor, filing a final account and subsequently resigning his trust in May, 1911, the resignation being accepted by the probate court. Shortly thereafter application was made in the probate court of Knox county by Eleanor Delano Shealey for the appointment of an administrator de bonis non of the estate, on the claim that there were assets belonging to the estate, to the amount of many thousands of dollars, which were unadministered. The probate court on hearing this application denied the same and refused to appoint an administrator de bonis non. The proceeding was taken on' appeal to the court of common pleas and was there heard on its merits, the court of common pleas adjudging that an administrator de bonis non should be appointed; and the court thereupon proceeded to and *378 did appoint the plaintiff, Columbus Ewalt, as such administrator de bonis non. So far as the record before us discloses, the adjudication and appointment thus made in the court of common pleas were never reviewed on error or appeal.
It is insisted, however, that the validity of the appointment may be contested in this case, and it is contested on the ground that the decision of the probate court refusing to appoint an administrator de bonis non was not appealable and that the court of common pleas had no jurisdiction to make the appointment. It appears that the parties went to trial on the merits in the court of common pleas in the case so attempted to be appealed, and it does not appear that any objection was made in that court to the appealability of the proceeding. We think it not important to review the statutes on the question of whether an appeal lies from the refusal of the probate court to appoint an administrator de bonis non. Whether or not such appeal would lie, it is apparent that error could have been prosecuted to that judgment of the probate court.
The parties having gone to trial on the merits in the court of common pleas, and having permitted the action to proceed to judgment without objection to its appealability, so far as the record shows, and on a matter in respect to which that court could have taken jurisdiction on error, they could not thereafter be permitted to question the jurisdiction of the court to try the case on appeal, even if they had so attempted in that action; much less can they do so collaterally in this proceeding. Drake et al., Trustees, v. Tucker et al., 83 Ohio St., 97; Cadwell v. Cadwell, 93 *379 Ohio St., 23; Barner v. Barner, 93 Ohio St., 477, and State, ex rel. Faber, Receiver, v. Jones et al., 95 Ohio St., 357.
The two cases from 93 Ohio St., cited, were tried in the court of appeals by the judges now sitting in the case at bar.
Furthermore, it must be remembered that a proceeding for the appointment of an administrator is one in rem, and, the .court having jurisdiction, its decision in that class of proceedings binds the whole world. That an application for the appointment of an administrator is a proceeding in rem was directly announced by the supreme court in Cross v. Armstrong, 44 Ohio St., 613, in the course of the opinion delivered by Judge Spear, at page 624.
It was held, In re Guardianship of Oliver, 77 Ohio St., 473, that a court of common pleas could appoint a guardian of an imbecile on appeal from an order of the probate court refusing to make an appointment and dismissing the application. The court in that case held that the common pleas court was empowered to make the appointment. It is true that the statute specifically authorizes an appeal from an order refusing to appoint a guardian, while no such specific provision is found as to the refusal of the probate court to appoint an administrator. That distinction, however, becomes unimportant in view of the facts already recited showing that the parties on the appeal went to trial on the merits of the case without objection.
We conclude, therefore, that the defendants can not now contest the validity of the appointment of Columbus Ewalt as administrator de bonis non of the estate of Elizabeth Delano, deceased.
*380 We proceed therefore to determine the issue as to whether the assets sought to be recovered in the proceeding at bar were really assets of the estate at the time of the death of Columbus Delano, or whether he had effectually parted with them by gift to his daughter, Elizabeth Delano Ames. The validity of the gift depends largely upon the execution and delivery of an instrument dated February 16, 1892, and the delivery of the property pursuant to such instrument. That instrument recites, in substance, that in consideration of natural love and affection he sells, assigns, transfers and sets over to his daughter, Elizabeth Delano Ames, of Washington, D. C, all of his personal property, consisting of bonds, notes, mortgages, choses in action, stocks and securities, except his bank stock and the live stock on his farms and the farming implements and household goods. The original of this instrument had been written out and was carried by Mr. Delano to the law office of Mr. Greer in Mount Vernon, and, at Delano’s request, R. M. Greer copied the same on the typewriter, and it was there signed in his presence and the acknowledgment of the signature taken before him as notary public. At the time of the execution of this instrument Columbus Delano was the owner of 230 shares of the capital stock of The Western Union Telegraph Company and of stock and securities in various other companies. The stock of The Western Union Telegraph Company, however, is the item about which most of the controversy in this case revolves. Subsequent to the making of this instrument Columbus Delano received from The Western Union Telegraph Com *381 pany stock dividends on this stock amounting to 23 shares, and on February 7, 1894, he purchased 47 additional shares, making 300 shares in all.
The assignment of his personal property to his daughter is shown to have been delivered to her in the summer of 1892, when she was visiting at her father’s home, known as Lake Flome, about a mile from the city of Mount Vernon. The certificates of stock were never signed over on the back by Columbus Delano to his daughter, but the assignment was made after his death by the defendant Ben Ames, as executor, who is the grandson of Columbus Delano and a son of Elizabeth Delano Ames, the executor claiming to act under authority of the written assignment to which reference has been made. There is, however, endorsed on the back of these certificates in a blank printed form prepared for that purpose the name “Mrs. E. Delano Ames,” and it is shown that in each instance this name appears in the handwriting of a confidential friend of Columbus Delano, who was employed in the First National Bank of Mount Vernon, in which bank Mr. Delano was a stockholder and director, and that the death of this friend occurred before that of Columbus Delano, so that the name of Mrs. Delano must of necessity have been written on the back of the certificates before the death of Mr. Delano. It was in this bank that Mr. Delano kept his private papers. After the death of Columbus Delano these certificates of stock and other securities claimed to have been passed by gift to Elizabeth Delano Ames were found in her possession in Washington, D. C, and it was at her request that *382 her son Ben Ames, as executor, completed the formal transfer on the back of the stock by signing his name thereto as executor.
It is apparent that the certificate for 47 shares of stock in The Western Union Telegraph Company could not pass directly and specifically under the provisions of this assignment and gift by Columbus Delano to his daughter, because it represents stock which he did not at that time own, but subsequently purchased. The evidence shows, however, that he had contemplated making a gift of 300 shares of stock in this company to his daughter, which was sufficient, in connection with the other evidence, to justify the finding by the trial judge that he had made and completed such gift.
The evidence shows that although this certificate for 47 shares of stock was taken in his name and paid for by him, yet he intended it as a gift to his daughter to complete the full' number of 300 shares which he had in mind at the time of the execution of the instrument transferring securities to her.
It is strenuously insisted by counsel for plaintiff that the fact that Columbus Delano had not signed his name to the endorsement of the stock on the back thereof shows that his intention was not to complete the gift to his daughter, but to retain control himself of the stock, notwithstanding the execution, and delivery of the written transfer already mentioned and the subsequent delivery of the stock. We have no doubt that the execution and delivery of the written transfer, followed by the delivery of the securities, completed the gift without the signature of the donor on the back of the certificates.
*383 Neither is the fact that Columbus Delano received some of the dividends subsequent to the transfer sufficient evidence to overcome the gift shown by the written transfer, delivery of the securities, and the conduct of the parties. By reason of the affectionate relations existing between Mr. Delano and his daughter it may well be that she was content to have him receive a part of the dividends declared on the stock, and the fact that he did receive some is not inconsistent with the completion of the gift. The oral evidence shows that he was solicitous about the continued support of his daughter and her children, and this evidence is supported by the language of his will in the bequest with relation to the children. He had already advanced to his son large sums of money and property, amounting perhaps to one-half of his estate.
By reason of the fact that the certificates of stock were not themselves assigned to Elizabeth Delano Ames by written endorsement on the back thereof, the dividends on the same continued to be issued by The Western Union Telegraph Company in the name of Columbus Delano. The evidence is not very clear as to who really received and appropriated the proceeds of these dividends subsequent to the execution of the instrument of transfer, but a considerable number of the drafts for the quarterly dividends on this stock were made payable to the daughter. The evidence is of such a character as to amply justify the common pleas judge in finding, as he did, that the gift to Elizabeth Delano Ames was completed and was a valid one, and that the securities were not a part of the *384 estate of Columbus Delano at the time of his death. All through the record it is apparent that the relations existing between Columbus Delano and his daughter were very close. Indeed, the first item of his will gives all of his correspondence and private papers to her and expresses a desire that no one shall have access to or direction over the same without her consent.
The conclusion reached would necessitate an affirmance of the judgment, for the plaintiff can not maintain an action for concealing assets of an estate where the evidence discloses that the assets have been ■ disposed of by the testator in his lifetime. There is, however, another defense urged and we have given it careful consideration. That defense is that the widow of Columbus Delano elected in fact by her words and conduct to take under the will, and if she did so the securities now sought to be reached would not pass to her even though they had been a part of the estate of Columbus Delano at the time of his death.
It will be unnecessary to review all of the evidence bearing on the subject of the widow having made an election, but it will be pertinent to indicate some of the facts bearing on that subject appearing in numerous places throughout the oral and documentary evidence. It is perfectly apparent that Mr. and Mrs. Delano had entered into an agreement with each other on the subject of the disposition to be made of their property, in pursuance of which each had conveyed certain property to the other, and their respective wills were made in fulfillment of the terms of this agreement. It was understood between them that the will of Mr, De *385 lano was to provide for his grandsons and that Mrs. Delano was to provide for the granddaughters in her will. This understanding was carried out by the terms of the wills. Mrs. Delano fully understood this matter, and the evidence in the record impresses the court that she was extremely anxious that the provisions of their wills should be carried out. This joint project, which was carefully planned by Mr. and Mrs. Delano, could not be carried out if she should take under the law rather than under the terms of the will left by him. Both Columbus Delano and his wife repeatedly stated to several of their intimate friends that they had made this arrangement, and they indicated to these friends their wish and desire that the same should be carried out. Shortly after the death of Columbus Delano, in the presence of several witnesses, and upon the occasion of the reading of his will, she again expressed her earnest wish that the provisions of the will should be carried out and an intention to do her part to accomplish that object. Indeed, so far as the record discloses, every statement made and act performed by her in relation to her husband’s estate indicated unequivocally that she elected to take under the will. We search the record in vain for any evidence looking to a contrary intent.
Certain payments were made to her by the executors and receipted for by her as being payments under the will of her deceased husband. We would, however, in the absence of this receipt, have no hesitancy in saying that the record contains ample evidence to justify the trial judge in finding that she had elected to take under the terms of *386 the will. That will gave her the right to use the entire income of the estate for her life if she required it. We are, however, entirely in accord with the following statement made by the trial judge in the opinion rendered by him in this case:
“In our judgment Mrs. Delano would not have refused to take under her husband’s will and elected to take under the law if in so doing she could have secured the entire estate of her husband, for in so doing she would have repudiated the deliberately planned arrangement which she and her husband had made for the distribution of their estates.”
The principles announced in the case of Baxter, Admr., v. Bowyer et al., 19 Ohio St., 390, are entirely applicable to this case. See also Lessee of Thompson v. Hoop, 6 Ohio St., 481.
Counsel on both sides cite and rely on The Colored Industrial School of Cincinnati v. Bates, Admr., et al., 90 Ohio St., 288. In reaching the conclusion that Mrs. Delano elected to take under the will of her husband we are not unmindful of the language of the court in the case just cited, that the acts relied on to constitute an election by conduct must be plain and unequivocal, done with a full knowledge of rights under the will and under the law respectively and of the true condition of the estate and generally be of such long duration as clearly shows a purpose to take under the will. In the absence of evidence to the contrary the presumption, of course, is that the widow chooses to take under the law rather than under the will. That presumption, however, is a rebuttable one, and in a case where the evidence clearly shows a *387 long-continued purpose on the part of both the husband and wife to make a disposition of their property by will, and where that purpose has been carried out with the full knowledge and approval of both, the presumption is not difficult to rebut. We have no hesitancy in reaching the conclusion in this case that it is rebutted by the evidence, and that Mrs. Delano is shown by her words and conduct to have elected to take under the will.
Some of the evidence on this subject comes from H. H. Greer and R. M. Greer, who are claimed to have been attorneys for Mr. and Mrs. Delano and to have received'the information under such circumstances as to make it privileged and render them incompetent to testify on this subject. It is apparent that much of the information which they received from the Delanos on this subject was imparted to them for the very purpose of having them make it manifest when the proper occasion should arrive. When we remember that Columbus Delano was himself an eminent member of the bar, and that he and his wife determined between themselves as to the disposition of their property and prepared their own wills, simply going to attorneys for the purpose of having them formally executed, we are not able in this instance to assent to the contention that the relation of attorney and client existed in respect to these matters, nor that the information given to H. H. and R. M. Greer was given under such circumstances as to be privileged. However, the case being in this court on error, we would be unable to say, even without the testimony of these attorneys, that the evidence was insufficient to maintain the finding and judgment of *388 the court that Mrs. Delano had elected to take under the will of her husband.
Finding no prejudicial error, the judgment will be affirmed.

Judgment affirmed.

Chittenden and Kinkade, JJ., concur.
Judges of the Sixth Appellate District sitting in place of Judges Powell, Houck and Shields of the Fifth Appellate District.